In the Matter of:

US
v.
Kyler Schmitz

---

Motions

December 16, 2016

---



Phone: 703-837-0076
Fax: 703-837-8118
Toll Free: 877-837-0077

1010 Cameron Street
Alexandria, VA 22310
transcript@casamo.com

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE EASTERN DISTRICT OF VIRGINIA

 3                 (Alexandria Division)

 4    -----------------------------------

 5    UNITED STATES OF AMERICA,

 6          Plaintiff,

 7       v.                      Case No. 1:16cr201

 8    KYLER GEORGE SCHMITZ,

 9          Defendant.

10    -----------------------------------

11                              Alexandria, Virginia

12                              December 16, 2016

13

14

15

16          The above-entitled matter came on to be

17    heard before the HONORABLE GERALD BRUCE LEE, Judge

18    in and for the United States District Court for the

19    Eastern Division of Virginia located at 401

20    Courthouse Square, Alexandria, Virginia, commencing

21    at 9:06 a.m., when were present on behalf of the

22    respective parties:
```

 1                    A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4          ALEXANDER BERRANG, ESQUIRE

 5          Assistant United States Attorney

 6          United States Attorney's Office

 7          Eastern District of Virginia

 8          2100 Jamieson Avenue

 9          Alexandria, Virginia  22314

10          (703) 299-3700

11

12    ON BEHALF OF THE DEFENDANT:

13          GEREMY KAMES, ESQUIRE

14          Federal Public Defender Office

15          1650 King Street

16          Suite 500

17          Alexandria, Virginia  22314

18          (703) 600-0800

19          (703) 600-0880 - fax

20

21

22    (Appearances continued on the following page.)

 1    APPEARANCES (continued):

 2

 3    ON BEHALF OF THE DEFENDANT:

 4          ERIC R. NITZ, ESQUIRE

 5          MoloLamken, LLP

 6          600 New Hampshire Avenue, Northwest

 7          Washington, D.C.  20037

 8          (202) 556-2021

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              P R O C E E D I N G S

 2              - - - - - - - - - - -

 3         THE CLERK:  116 criminal 201, United States

 4    versus Kyler George Schmitz.

 5         MR. BERRANG:  Good morning, Your Honor.

 6    Alex Berrang on behalf of the United States.

 7         THE COURT:  Good morning, Mr. Berrang.

 8         MR. BERRANG:  Thank you.

 9         MR. KAMES:  Good morning, Your Honor.

10    Geremy Kames on behalf of Mr. Schmitz, along with

11    Eric Nitz with the firm of MoloLamken.

12         THE COURT:  Good morning, Mr. Schmitz.

13    Good morning, Mr. Nitz, and Mr. Kames.

14         Mr. Kames, who is going to speak for

15    Mr. Schmitz?

16         MR. KAMES:  Your Honor, if it's okay with

17    the Court, Mr. Nitz will argue the motion for

18    downward departure and then I will discuss the 3553A

19    factors.

20         THE COURT:  All right.  Well, let me ask

21    first, have you all reviewed the presentence report?

22         MR. KAMES:  We have.
```

```
 1              THE COURT:  Any objection to the report?

 2              MR. KAMES:  None, Your Honor.

 3              THE COURT:  All right.  Thank you.  I'll

 4    hear you on your motion for downward departure.

 5              MR. KAMES:  Thank you.

 6              MR. NITZ:  Good morning, Your Honor.

 7              THE COURT:  Good morning, Mr. Nitz.

 8              MR. KAMES:  The Orlando Pulse nightclub

 9    shooting was one of the worst mass shootings in the

10    history of the country and it prompted a visceral

11    emotional response in Mr. Schmitz.  The tweets that

12    are at issue in this case were a single emotional

13    response to that -- to that event.

14              As Dr. Boyd explained in the report, it was

15    an impulsive, spontaneous reaction to something that

16    touched Mr. Schmitz very deeply.  It was a misguided

17    attempt to foster public debate on a topic that he

18    cared about.

19              THE COURT:  How many tweets were there and

20    over what period of time, Mr. Schmitz?

21              MR. KAMES:  There were quite a few tweets,

22    Your Honor, and they ranged from -- as described in
```

 1  the presentence report, from June 13th to, I

 2  believe, June 18th.  There may have been some tweets

 3  after that time period as well that were related to

 4  this, but there certainly were more than one tweet.

 5  There were --

 6          THE COURT:  Well, I'm sure it's more than

 7  one.  I guess one of the questions I have is the

 8  U.S. Capitol Police went to visit Mr. Schmitz,

 9  right?

10          MR. KAMES:  Yes, Your Honor.

11          THE COURT:  And after that he continued to

12  tweet?

13          MR. KAMES:  He did.

14          THE COURT:  All right.  So what makes this

15  aberrant behavior, Mr. Schmitz?

16          MR. KAMES:  It was a single response to

17  this -- this attack.  It was a single attempt to

18  process his emotions after the attack and it was a

19  marked deviation from how he conducted himself up to

20  that point.

21          Certainly -- I recognize that it's unusual

22  under these circumstances for a downward departure

1  to be granted; but if ever there's a case where it's

2  warranted it's this one, given the emotional nature

3  of Mr. Schmitz's reaction to those events and the

4  course of conduct that followed afterwards.  It

5  really was a single continuous attempt to try and

6  process his emotions in light of that shooting.

7          THE COURT:  Well, do the guidelines allow

8  me to take into account multiple violations to

9  determine aberrant behavior or is it just one --

10  more than one?

11         MR. KAMES:  The guideline -- the guideline

12  states that it has to be a single criminal

13  occurrence or a single criminal transaction; but in

14  light of this context and the uniqueness of the

15  circumstances, the entire course of conduct

16  following the shooting can be viewed as one single

17  criminal transaction.

18         THE COURT:  All right.  Thank you.

19         MR. KAMES:  Thank you, Your Honor.

20         THE COURT:  All right.

21         MR. BERRANG:  Thank you, Your Honor.  The

22  Government believes what the -- what Your Honor was

1  driving at in the questions you asked defense

2  counsel is this notion what is a single criminal

3  occurrence or single criminal transaction.

4        On that front the Government directs the

5  Court's attention to a case that was cited in our

6  position paper, which is United States versus

7  Hillyer.  And in that case, it involved illegal prop

8  dredging.  And there are multiple instances of

9  illegal prop dredging in that case.  And as a

10  result, because it happened more than once, that

11  criminal act happened more than once in Hillyer, the

12  Fourth Circuit said that a downward departure was

13  not appropriate.

14        The Government also --

15        THE COURT:  You didn't bring a charge for

16  every single threatening tweet, did you?

17        MR. BERRANG:  We charged five tweets, Your

18  Honor.

19        THE COURT:  But you could have charged 20,

20  right?

21        MR. BERRANG:  I -- I don't believe we

22  could've charged 20, Your Honor.

1          THE COURT:  You could have charged every

2     single tweet that was threatening?

3          MR. BERRANG:  We could have charged --

4     there were -- there was potentially a few more

5     tweets we could have charged as threatening.

6          THE COURT:  But you used your discretion

7     not to bring those charges?

8          MR. BERRANG:  That's correct, Your Honor.

9          THE COURT:  Well, why is this all one

10    transaction?

11         MR. BERRANG:  Well, the Government's view

12    is that this was not one transaction, especially

13    when you view the course of conduct.  You have an

14    initial tweet, which brings the U.S. Capitol Police

15    to the defendant's house.  The defendant then has a

16    conversation with the Capitol Police about what he

17    has tweeted and is informed by Capitol Police that

18    his conduct is a crime.  It's a crime to threaten

19    federal officials --

20         THE COURT:  There is nothing wrong with

21    being upset about the terrible tragedy at the Pulse

22    nightclub, no more than it is to be upset about what

1    happened at the Emanuel Church.  There is nothing

2    unconstitutional about that, is there?

3            MR. BERRANG:  Absolutely not, Your Honor.

4            THE COURT:  And one can be upset and angry

5    and disturbed by it.

6            MR. BERRANG:  That's correct.

7            THE COURT:  I've actually been to Emanuel

8    Church many times.  I have friends who attend that

9    church.  In fact, one was at that church the very

10   night of the murder and she had just left church

11   about an hour earlier.  And had that man showed up

12   at the church an hour earlier, you would have had a

13   packed church because the church meeting was that

14   night.

15           But you can't just go out and threaten

16   government officials because you think the gun

17   control laws are lax, can you?

18           MR. BERRANG:  No, Your Honor.

19           THE COURT:  Okay.  Thank you.

20           MR. BERRANG:  Thank you.

21           THE COURT:  Anything further, Mr. Nitz?

22           MR. KAMES:  Just one quick point, Your

 1    Honor.  Nobody is saying that what Mr. Schmitz did

 2    was okay.  Nobody is saying that his response to

 3    these attacks is how someone should process those

 4    emotions.  But the Court can certainly consider that

 5    this was a spontaneous emotional response and that

 6    all of these tweets resulted from that single

 7    spontaneous emotional response and that this was

 8    highly unique and highly unusual circumstances.

 9            And Mr. Schmitz responded in a way that was

10    highly unusual given how he conducted himself in the

11    past.  And for that reason, we'd ask the Court to

12    grant the downward departure.

13            THE COURT:  All right.  Let the record

14    reflect this matter is before the Court for

15    sentencing.  The probation officer has properly

16    prepared the report.  And the question presented is

17    whether or not the Court should grant a downward

18    departure from the applicable guidelines based upon

19    aberrant behavior on U.S. sentencing guidelines

20    5K2.20.

21            And the guideline provides, in exceptional

22    cases, a downward departure may be warranted where

1   the defendant committed a single criminal occurrence

2   or a single criminal transaction.  One, that was

3   committed without significant planning.  Two, that

4   was in limited duration.  And, three, that

5   represents a marked deviation by the defendant from

6   an otherwise law-abiding life.  And the Government

7   cited the Hillyer case and defense counsel has cited

8   several cases as well.

9          First, let me say that I understand that

10  Mr. Schmitz has strong views about what happened and

11  I think that many people have strong views about

12  what happened.  The question here is whether his

13  multiple tweets, which were -- are now the subject

14  of this case, were a single criminal occurrence or

15  single criminal transaction.

16         I'm sure that in Mr. Schmitz' mind all his

17  activity was directed at the Pulse nightclub

18  tragedy, and I certainly would understand that.  But

19  the challenge here is that even after being told by

20  the Capitol Police that he should not do these

21  things, he continued to do them.

22         So it seems to me that first this would not

1    qualify for downward departure because it was not a

2    single occurrence of a criminal transaction, it was

3    not a limited duration.

4         It may well be a deviation from the

5    defendant's otherwise law-abiding life.  And I

6    certainly can address those issues under 3553A, but

7    for purposes of the guidelines calculation, my

8    judgment is that the multiple threats over multiple

9    days -- and I also have considered the United States

10   versus Pierson case from the Ninth Circuit -- and my

11   judgment is that the motion for downward departure

12   be denied.

13        Therefore, the applicable guideline range

14   here is a criminal history category, Category 1,

15   offense level 14.  The guideline range is 15 to 21

16   months and a one to three-year term supervised

17   release.

18        My understanding is and I've accepted a

19   plea agreement, which says that both sides agree to

20   no more than six months of incarceration, if

21   incarceration is imposed, should be applicable in

22   this case.

 1              Does the Government want to be heard on

 2     sentencing in this matter, Mr. Berrang?

 3              MR. BERRANG:  Thank you, Your Honor.

 4              Your Honor, as the Government noted in its

 5     position paper, the request that we're putting forth

 6     to the Court is for six months incarceration, three

 7     years supervised release with computer monitoring,

 8     and that's consistent with the plea agreement.

 9              The defense counsel and defendant are

10     asking for a minimal sentence of probation.  And the

11     Government believes that its difference in views of

12     what the appropriate sentence here is a reflection

13     of different views on what this conduct was and what

14     it was not.  And in the Government's view, this was

15     not, as the defendant suggests, political activism.

16     It was not funny, where he's just testing jokes, and

17     it wasn't certainly excused by what others have

18     done.

19              What the defendant did was alarming, it was

20     disturbing and, most importantly, it was unlawful.

21     As the presentence report shows, the defendant used

22     clear, descriptive language; he threatened to shoot

 1  three U.S. senators in the head, explaining his

 2  desire to, quote, "Admire how a victim's brains are

 3  going to splatter across the room."

 4       And while defendant now claims that he had

 5  no intention of carrying out his threats, the

 6  Government submits that his words in June 2016

 7  suggested otherwise.  He transmitted tweets asking

 8  others about how to get a gun.  He even tweeted,

 9  quote, that he was, quote, "Literally going to buy a

10  gun," end quote, and use it to shoot a U.S. Senator,

11  quote, "in the face."

12       The U.S. senators, the Senate staff, the

13  general public on Twitter who saw these tweets, they

14  had no way of knowing whether the defendant wasn't

15  actually serious as he now claims.  And with respect

16  to the culpability of the defendant versus other

17  individuals who have committed similar acts, the

18  Government disagrees that the appropriate

19  comparisons are the Jones, Turner, Leslie and Dalton

20  defendants that the defendant cites to.

21       The Government's review of those cases

22  indicates that those cases involved single tweets --

1  or single threats, rather.  And in the case of

2  Jones, the threat that was transmitted was stated

3  generically and conditionally, if-then statements.

4         If we are to put the defendant's conduct on

5  a -- on a continuum where at one end you have the

6  Jones, Turner, Leslie, and Dalton case, the

7  Government submits that the other end of that

8  continuum would be the cases of Morton, Chesser, and

9  al-Khattab.  Those cases were cases involving the

10  posting to a Web site in support of a violent jihad,

11  the solicitation of murder, among others the

12  creators of South Park and Jewish organizations.

13         The defendant here posted multiple,

14  specific threats, many of which were sent after

15  being interviewed by U.S. Capitol Police and told

16  that his conduct constituted a crime.  The

17  Government submits that his conduct, if we were to

18  put it on that continuum, falls closer to the

19  Morton, Chesser and al-Khattab defense than to the

20  Jones, Turner, Leslie and Dalton defense.

21         And it should be noted that al-Khattab

22  received 30 months for using the Internet to place

 1   another in fear of death or serious injury while

 2   Morton, Chesser received 60 months for communicating

 3   threats.

 4        Now, the Government believes that the

 5   appropriate sentence here is six months.  Such a

 6   sentence, in the Government's view, would

 7   appropriately punish his conduct, promote respectful

 8   law, and deter others from committing similar acts.

 9   Because the reality here is what the defendant did

10   was not a protest, it was not the defendant

11   exercising his First Amendment rights.  What it was

12   was the defendant trying to get what he wants, gun

13   control, through fear and coercion.

14        We live in a world where brazen threats of

15   violence over the Internet or in person are all too

16   common.  The defendant's words were published on a

17   widely accessed social media platform and seen by an

18   unknowable number of people.  His punishment today

19   should send a clear message to the victims, others

20   contemplating similar conduct, and to our country

21   that the making of unlawful threats, whether to

22   federal officials or to ordinary citizens, will not

1    be tolerated.

2           Thank you.

3           THE COURT:  All right.  All right.

4    Mr. Kames, I'll hear from you.

5           MR. KAMES:  Your Honor, as the Court knows,

6    we've asked for a sentence of one year of probation.

7    And we believe that the key to understanding this

8    case is reflected in the letters that have been

9    submitted on behalf of Mr. Schmitz, along with the

10   reports of Dr. Boyd and Dr. Golbeck.

11          First, let me speak about Kyler Schmitz.

12   He's a 28-year-old young man who has never been in

13   any significant trouble before in his life, who is

14   passionate about social justice.  That's why he came

15   to Alexandria in the first place from Minnesota to

16   work for a public interest organization and advocate

17   for the interest that he cares deeply about.

18          When he came seven years ago, he interned

19   with a documentary film crew that produced a film

20   called Bully, which was released in 2011.  And it

21   documented the story of five kids and their families

22   as they navigated the 2009/2010 school year.  He

1  volunteered with the human rights campaign and civil

2  rights organization that's devoted to promoting

3  equality for gay and transgender people.

4         There is also a letter that we've submitted

5  from Shirley Ginwright, the president of the Fairfax

6  County NAACP, where Kyler has been a member for and

7  volunteered for the past two years.

8         As Mr. Schmitz's fiancé writes:  Social

9  justice is what Mr. Schmitz is passionate about.

10  His commitment to social justice is undoubtedly tied

11  to his experiences as a young gay man who was

12  bullied and beaten up because of his sexual

13  orientation.

14         According to Dr. Boyd's report, his

15  negative experiences as a young man contributed to

16  Mr. Schmitz's desire to avoid direct confrontation,

17  it hampered his ability to assert himself and

18  express negative emotions.  These two facets of his

19  personality, his commitment to social justice and

20  his repressed desire to express himself, they found

21  an outlet in social media.

22         But there is a third factor of his

1   personality that also contributed to this offense,

2   and that is the well-documented and lengthy history

3   of ADHD.  People with ADHD typically have difficulty

4   inhibiting their impulsive behavior.  They have a

5   hard time maintaining attention, they have a hard

6   time organizing, they have discontrolled emotions.

7   And the combination of all of these elements in

8   Kyler's personality were exacerbated on the

9   Internet.

10          As Dr. Boyd explained, Kyler found an

11   outlet for his emotions and his political activism

12   and in social media online.  Unfortunately, the

13   Internet is characterized by several features that

14   promote impulsivity and disinhibition, such as

15   anonymity, the ability to engage and disengage at

16   will, online cultures that value free expression

17   over anything else.  In essence, his interpersonal

18   and executive functioning -- functioning impairments

19   were dramatically amplified by the unique features

20   of social media.

21          Now, let me speak about the offense

22   conduct.  Professor Golbeck described Twitter in her

1    declaration as essentially the wild west of

2    communication.  People make extraordinarily

3    disturbing and threatening statements on Twitter all

4    the time, almost always using an anonymous account.

5    And that's not to say that it's okay, but it is to

6    provide a context for the conduct in this case.  As

7    she writes, this is -- well, she says that in the

8    realm of communications on Twitter, this was at the

9    low end of the degree of threatening communications

10   that are made on Twitter.

11        To be clear, Kyler is not someone who has

12   made threats on the Internet as a matter of course,

13   he is not some Internet troll who engaged in a

14   regular practice of making rude or inappropriate

15   statements on Twitter or anywhere else.

16        As the Court knows, this conduct occurred

17   in the days following the worst mass shooting in

18   modern American history where 49 mostly gay people

19   were shot to death by a gunman with an assault

20   rifle.

21        The Government suggests that Mr. Schmitz

22   may be merely spinning his conduct in the context of

1    the Pulse shooting, but there should be no doubt

2    that Mr. Schmitz was motivated by the same impulses

3    that have guided his interest in social justice

4    generally.  When he was interviewed on June 15th by

5    law enforcement, he cried when he told law

6    enforcement that he felt afraid to be in public

7    places.

8              His fiancé wrote that Mr. Schmitz was

9    emotionally compromised by the shooting in Orlando.

10   His godmother wrote that, quote, "The reality that

11   the people at that club were slaughtered because

12   they were assumed to be gay is a hard reality to

13   accept because it suggests that they were hated for

14   what they are and not who they are."

15             Now, as the Court knows, none of that is an

16   excuse for the threats that Mr. Schmitz tweeted in

17   the days after the shooting.  And the Government

18   says, I think accurately, that these threatening

19   tweets involved, quote, "clear and descriptive

20   language," but you can't look at these tweets in

21   isolation and have any understanding of the context

22   in which they were made.

1           Tweets, as the Court knows, are limited to

2    140 characters.  And they're -- because they're so

3    short, they're often linked together with other

4    messages.  And just like you can't take a page from

5    the middle of a book and understand what that book

6    is trying to say, you can't look at one tweet, the

7    tweets that the Government identified in the

8    charging document, and understand that those tweets

9    are all of what Mr. Schmitz was trying to convey.

10          And I'd like to make three points that are

11   mitigating this case.  First, the nature of the

12   statements at issue in the context of Twitter were

13   not extreme.  Professor Golbeck explains that the

14   statements at issue in this case, when taken in the

15   context of the original post indicating them as an

16   online image-oriented protest, are relatively mild

17   in comparison.  They fall at the lower end of

18   threatening communications that occur on Twitter.

19          And she says that because the messages were

20   linked to an initial post in which the @Chirperson

21   account said, quote, "I would never buy a gun.  No

22   one should ever need to.  That said, I'm going to

1   shoot some gif or image guns at republicans."

2         And so when the Government says there was

3   no way of knowing for the recipients of these

4   communications, so the people who work with the

5   individuals who were mentioned, there is no way of

6   knowing whether this was a real or not a real

7   threat.  But there is a way, and that is to look at

8   all the statements in context and the original post

9   that they were linked to.  That is not to say that

10  this is not unlawful.  It is to provide context for

11  these statements.

12        Second point, by all accounts, Mr. Schmitz

13  had no intention of actually carrying out any

14  threat.  He is adamantly against guns.  He has never

15  touched one.  He made no serious effort to ever get

16  one.

17        The third point is that this offense was

18  not motivated by a desire for money or personal

19  animosity towards someone that Mr. Schmitz

20  personally knows.  That is often the context of

21  threats, so it could be against a former loved one

22  or for some other nefarious reason.  This is someone

1   who is deeply affected and angered by the worst mass

2   shooting in modern American history.

3          And given his documented inability or

4   difficulty in controlling his impulses, as Dr. Boyd

5   said, in an environment where his impairments were

6   dramatically amplified, he expressed himself in a

7   way that he now realizes was the worst thing he's

8   ever done.

9          I will say that they're -- and I think --

10  and it's very clear in the presentence report, there

11  has been a marked changed in Mr. Schmitz since he

12  was arrested in this case.  He hasn't touched

13  alcohol since June of this year, he's progressed in

14  counseling, he's found a job that he enjoys.  He

15  started to think about his future career.

16         He is also now a convicted felon.  He's

17  been on house arrest for months.  He lost his job as

18  an Uber driver.  He was unable to attend a close

19  family's wedding -- family member's wedding.  So

20  he's already been punished in significant ways.

21         As for the Government's recommendation for

22  a sentence of incarceration, I suggest that it would

 1   do more harm than good.  It would require

 2   Mr. Schmitz, of course, to lose his job.  And he is

 3   precisely the type of person who would not benefit

 4   from incarceration and could be victimized in that

 5   context.

 6          There is absolutely zero evidence that a

 7   sentence of incarceration would have a greater

 8   deterrent effect on him than the prosecution itself.

 9   And in terms of the public generally, suggesting

10   that this case is going to stop threats on Twitter

11   is like trying to put a Band-Aid on a firehose.

12          A six-month sentence would cost the

13   government about $15,000 and it would get very

14   little in return for that investment.

15          A sentence of probation with a condition

16   that he be monitored by probation along with the

17   other standard conditions then -- when I say

18   "monitored," I mean a monitoring of his -- his

19   social media activity, would be sufficient to

20   satisfy the purposes of sentencing in this case.

21          Again, the underlying conduct arose because

22   of a unique event.  There is no indication that

1    Mr. Schmitz would ever engage in this type of

2    behavior again.  He has fully complied, for example,

3    with the pretty strict conditions of pretrial

4    release that he's been under.  Such a sentence would

5    also --

6              THE COURT:  How long has he been on

7    pretrial release, Mr. Kames?

8              MR. KAMES:  He's been on release -- I think

9    he was brought in on June 25th, he spent four days

10   in jail and -- since that time.  So at the end of

11   June, he's been on pretrial release.

12             THE COURT:  More than five months now?

13             MR. KAMES:  That's right.

14             THE COURT:  Okay.

15             MR. KAMES:  And such a sentence would also

16   be consistent with the series of cases that we

17   outlined that have also involved similar single

18   count charges of making threats.

19             Now, the Government points to some very

20   different cases.  The Morton case, the Chesser case,

21   off the top, some of those involve very different

22   allegations of conduct, conduct -- conduct involving

1   very different and much more serious violations of

2   the federal code, including terrorism offenses.

3   That's not this case.

4           Under the circumstances here, where you

5   have an individual who is passionate about social

6   justice, has conditions that are documented and that

7   we've presented to the Court that suggest that he

8   was disinhibited in the Internet environment, and in

9   the context of the unique event of this mass

10  shooting using an assault rifle, we have done enough

11  in this case to deter Mr. Schmitz and others who may

12  be in a similar situation.

13          And for those reasons, Your Honor, we

14  believe that a year of probation is sufficient and

15  not greater than necessary to satisfactory the

16  purposes of sentencing.

17          THE COURT:  Thank you.

18          Mr. Schmitz, if you'll come up, please.

19  Schmitz, how long were you in jail?

20          THE DEFENDANT:  Four -- four or five days.

21          THE COURT:  Have you ever been to jail

22  before?

```
 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  How long were you in jail

 3   before?

 4              THE DEFENDANT:  No longer than a night.

 5              THE COURT:  One night?

 6              THE DEFENDANT:  Yeah.

 7              THE COURT:  Is there any statement that you

 8   want to make on your own behalf?

 9              THE DEFENDANT:  This was an incredibly

10   stupid thing for me to do.  It was

11   counterproductive, it was immature, it was damaging.

12   I'm very sorry that I did it and I will not be doing

13   this ever again.

14              THE COURT:  Since Schmitz pled guilty to

15   interstate threatening communication -- and I have

16   reviewed the submissions of your lawyer and the

17   Government and the letter submitted from your family

18   members, your mother's letter, from your father,

19   from your aunt, your fiancé, Ms. Roe, Ms. Ginwright

20   from the NAACP, and the manager of your restaurant,

21   I've read them.

22              Here is the thing, Mr. Schmitz, you heard
```

1   me say a moment ago that I have strong views about

2   what happened in Emanuel Church, but there are

3   limits on what you can do.  And I think that what

4   happened here, as I view the context, the Pulse

5   nightclub shooting was a horrible tragedy, not just

6   for the families of the victims who were murdered

7   and slaughtered, but for a whole community, a whole

8   nation who mourn for what happened there.

9           And, as you know, because you were active

10  in social justice, the way to change things is

11  through voting, is through petitions, is through

12  protest, but it is not to threaten members of

13  Congress, it is not to threaten members of the

14  Senate, it's not to threaten anyone else.  That

15  won't change anything.

16          And I've also considered the fact that

17  these individuals are in public office.  I guess

18  they're used to having people despise their views,

19  disagree with their views, but they're not used to

20  being threatened with death or their brains being

21  splattered on the sidewalk.  That is not something

22  that anyone should have to endure and the person who

 1   has -- (inaudible) -- protest.  And this was not a

 2   protest.  This was a very dangerous threat -- series

 3   of threats that you made.

 4        My question now is whether to send you to

 5   prison for a long period of time, whether that will

 6   punish you sufficiently, whether that will somehow

 7   make the members of Congress who were threatened

 8   feel safe as you were off the streets.  And also

 9   whether to consider your -- your mental health,

10   which your lawyer has provided me information about

11   your ADHD and how that may impact impulsive

12   behavior.  And, of course, we all know that Twitter

13   is a place that people are frequently communicating

14   ideas and issues, including the new president that

15   seems to be there every single day.  So -- but you

16   can't use it the way that you did here.

17        As I look over your whole life, and this is

18   a situation where I look over your whole life, I

19   don't think this is consistent with the person

20   you've been and I don't think that putting you in

21   prison for an additional period of time is going to

22   be sufficient punishment.

```
1            But let me caution you, this is a very

2    serious offense; and if I do what your lawyer asks,

3    what you should know is if I were to see you again

4    for any reason whatsoever, drunk driving, fights on

5    the street, anything like that, I will put you in

6    prison.  Not jail, prison.

7            So here is what I'm going to do.  I think

8    that the guidelines here -- even the Government felt

9    that the guidelines are excessive.  I agree to a

10   six-month sentence.  And you have completed five

11   months of home confinement, which suggests to me

12   that you're a person who conforms his behavior and

13   adheres to the rules.

14           So I'm going to place you on two years of

15   active probation, require you to be on home

16   confinement for an additional 90 days.  And as along

17   as you adhere to the rules for home confinement, you

18   adhere to the rules of probation for two years, at

19   the end of 12 months, I'll review the case.  And if

20   your lawyer and the Government and probation officer

21   tells me there's no point of keeping you on

22   probation another year, I'll consider early
```

1    termination.  But what you should know is 90 days of

2    home confinement are the same terms and conditions

3    that you have for pretrial release, which is that

4    you cannot leave your place of residence except for

5    employment and activities approved in advance by the

6    probation officer.

7          That you comply with the requirements of

8    computer monitoring as administered by the probation

9    officer, which means that software will be installed

10   on your computer or any smart phone you use, and

11   inspection will be performed at random by the

12   probation office and you are not to remove the

13   software or tamper with it.

14         I think it's time for you to stay off

15   Twitter and Facebook and all those other things.  So

16   there'll be no social media, and you should not have

17   any accounts.  And I don't know all the names of

18   them.  I bet you do.  Instagram, there's another --

19   there is five or six of them, I don't want you on

20   any of them.

21         And I want you participating in mental

22   health treatment at the direction of the probation

1    officer.  And you're required to waive

2    confidentiality regarding any mental health

3    treatment, release information to the probation

4    office, and cost of the program to be paid by you

5    based upon your ability to pay, and directed by the

6    probation office.

7              And I'm going to have you participate in a

8    substance abuse testing and treatment, not because I

9    think you have a problem, I want to make sure that

10   you don't have a problem and that alcohol abuse has

11   not become a problem.  I've seen some indication of

12   excessive use of alcohol and I want to make sure you

13   understand that that's not going to be tolerated.

14             So to be clear, I'm placing you on two

15   years of active probation, home confinement for an

16   additional 90 days.  And you've already served

17   almost five months.  So I'm assuming you can do this

18   and not break the rules.  But if you break the rules

19   and you come back, I'll put you in prison.  Do you

20   understand?

21             I'm not going to impose any fine, cost of

22   incarceration, cost of supervision.  And I'll assess

1   $100, and that will be paid right away.  Thank you.

2   You're excused.

3           MR. KAMES:  Thank you, Your Honor.

4           (Whereupon, the proceedings at 9:38 a.m.

5   were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1    COMMONWEALTH OF VIRGINIA AT LARGE, to wit:

2         I, REBECCA TREXLER, Court Reporter and

3    Notary Public in and for the Commonwealth of

4    Virginia at Large, and whose commission expires

5    August 31, 2021, do certify that the foregoing is a

6    true, correct, and full transcript of the

7    proceedings.

8         I further certify that I am neither related

9    to nor associated with any counsel or party to the

10   proceedings; nor otherwise interested in the event

11   thereof.

12

13

14

15   _____

16        Rebecca Trexler

17        Notary Public

18        Commonwealth of Virginia at Large

19        Notary No. 7243327

20

21

22

## WORD INDEX

**< $ >**
**$100** 35:*1*
**$15,000** 26:*13*

**< 1 >**
**1** 13:*14*
**1:16cr201** 1:*7*
**116** 4:*3*
**12** 32:*19*
**13th** 6:*1*
**14** 13:*15*
**140** 23:2
**15** 13:*15*
**15th** 22:*4*
**16** 1:*12*
**1650** 2:*15*
**18th** 6:2

**< 2 >**
**20** 8:*19*, 22
**20037** 3:7
**2009** 18:22
**201** 4:*3*
**2010** 18:22
**2011** 18:*20*
**2016** 1:*12* 15:6
**202** 3:8
**2021** 36:5
**21** 13:*15*
**2100** 2:8
**22314** 2:*9, 17*
**25th** 27:9
**28-year-old** 18:*12*
**299-3700** 2:*10*

**< 3 >**
**30** 16:22
**31** 36:5
**3553A** 4:*18* 13:6

**< 4 >**
**401** 1:*19*

**49** 21:*18*

**< 5 >**
**500** 2:*16*
**556-2021** 3:8
**5K2.20** 11:*20*

**< 6 >**
**60** 17:2
**600** 3:6
**600-0800** 2:*18*
**600-0880** 2:*19*

**< 7 >**
**703** 2:*10, 18, 19*
**7243327** 36:*19*

**< 9 >**
**9:06** 1:*21*
**9:38** 35:*4*
**90** 32:*16* 33:*1*
34:*16*

**< A >**
**a.m** 1:*21* 35:*4*
**aberrant** 6:*15* 7:9
11:*19*
**ability** 19:*17*
20:*15* 34:*5*
**above-entitled** 1:*16*
**Absolutely** 10:*3*
26:6
**abuse** 34:*8, 10*
**accept** 22:*13*
**accepted** 13:*18*
**accessed** 17:*17*
**account** 7:8 21:*4*
23:*21*
**accounts** 24:*12*
33:*17*
**accurately** 22:*18*
**act** 8:*11*
**active** 30:9 32:*15*
34:*15*

**activism** 14:*15*
20:*11*
**activities** 33:5
**activity** 12:*17*
26:*19*
**acts** 15:*17* 17:8
**adamantly** 24:*14*
**additional** 31:*21*
32:*16* 34:*16*
**address** 13:6
**ADHD** 20:*3, 3*
31:*11*
**adhere** 32:*17, 18*
**adheres** 32:*13*
**administered** 33:8
**Admire** 15:2
**advance** 33:5
**advocate** 18:*16*
**afraid** 22:6
**ago** 18:*18* 30:*1*
**agree** 13:*19* 32:9
**agreement** 13:*19*
14:8
**alarming** 14:*19*
**alcohol** 25:*13*
34:*10, 12*
**Alex** 4:6
**ALEXANDER** 2:4
**Alexandria** 1:*3, 11,*
20 2:9, *17* 18:*15*
**al-Khattab** 16:*9,*
*19, 21*
**allegations** 27:*22*
**allow** 7:7
**Amendment** 17:*11*
**AMERICA** 1:5
**American** 21:*18*
25:2
**amplified** 20:*19*
25:6
**angered** 25:*1*
**angry** 10:*4*
**animosity** 24:*19*
**anonymity** 20:*15*
**anonymous** 21:*4*

**Appearances** 2:22
3:*1*
**applicable** 11:*18*
13:*13, 21*
**appropriate** 8:*13*
14:*12* 15:*18* 17:5
**appropriately** 17:7
**approved** 33:5
**argue** 4:*17*
**arose** 26:*21*
**arrest** 25:*17*
**arrested** 25:*12*
**asked** 8:*1* 18:6
**asking** 14:*10* 15:7
**asks** 32:2
**assault** 21:*19*
28:*10*
**assert** 19:*17*
**assess** 34:22
**Assistant** 2:5
**associated** 36:9
**assumed** 22:*12*
**assuming** 34:*17*
**attack** 6:*17, 18*
**attacks** 11:*3*
**attempt** 5:*17*
6:*17* 7:5
**attend** 10:8 25:*18*
**attention** 8:5 20:5
**Attorney** 2:5
**Attorney's** 2:6
**August** 36:5
**aunt** 29:*19*
**Avenue** 2:8 3:6
**avoid** 19:*16*

**< B >**
**back** 34:*19*
**Band-Aid** 26:*11*
**based** 11:*18* 34:5
**beaten** 19:*12*
**behalf** 1:*21* 2:*3,*
12 3:*3* 4:6, *10*
18:9 29:8

behavior 6:15
7:9 11:19 20:4
27:2 31:12 32:12
believe 6:2 8:21
18:7 28:14
believes 7:22
14:11 17:4
benefit 26:3
BERRANG 2:4
4:5, 6, 7, 8 7:21
8:17, 21 9:3, 8, 11
10:3, 6, 18, 20
14:2, 3
bet 33:18
book 23:5, 5
Boyd 5:14 18:10
20:10 25:4
Boyd's 19:14
brains 15:2 30:20
brazen 17:14
break 34:18, 18
bring 8:15 9:7
brings 9:14
brought 27:9
BRUCE 1:17
bullied 19:12
Bully 18:20
buy 15:9 23:21

< C >
calculation 13:7
called 18:20
campaign 19:1
Capitol 6:8 9:14,
16, 17 12:20 16:15
cared 5:18
career 25:15
cares 18:17
carrying 15:5
24:13
Case 1:7 5:12
7:1 8:5, 7, 9 12:7,
14 13:10, 22 16:1,
6 18:8 21:6
23:11, 14 25:12

26:10, 20 27:20,
20 28:3, 11 32:19
cases 11:22 12:8
15:21, 22 16:8, 9,
9 27:16, 20
Category 13:14, 14
caution 32:1
certainly 6:4, 21
11:4 12:18 13:6
14:17
certify 36:5, 8
challenge 12:19
change 30:10, 15
changed 25:11
characterized
20:13
characters 23:2
charge 8:15
charged 8:17, 19,
22 9:1, 3, 5
charges 9:7 27:18
charging 23:8
Chesser 16:8, 19
17:2 27:20
Chirperson 23:20
Church 10:1, 8, 9,
9, 10, 12, 13, 13
30:2
Circuit 8:12
13:10
circumstances
6:22 7:15 11:8
28:4
cited 8:5 12:7, 7
cites 15:20
citizens 17:22
civil 19:1
claims 15:4, 15
clear 14:22 17:19
21:11 22:19
25:10 34:14
CLERK 4:3
close 25:18
closer 16:18

club 22:11
code 28:2
coercion 17:13
combination 20:7
come 28:18 34:19
commencing 1:20
commission 36:4
commitment
19:10, 19
committed 12:1, 3
15:17
committing 17:8
common 17:16
COMMONWEAL
TH 36:1, 3, 18
communicating
17:2 31:13
communication
21:2 29:15
communications
21:8, 9 23:18
24:4
community 30:7
comparison 23:17
comparisons 15:19
completed 32:10
complied 27:2
comply 33:7
compromised 22:9
computer 14:7
33:8, 10
concluded 35:5
condition 26:15
conditionally 16:3
conditions 26:17
27:3 28:6 33:2
conduct 7:4, 15
9:13, 18 14:13
16:4, 16, 17 17:7,
20 20:22 21:6, 16,
22 26:21 27:22,
22, 22
conducted 6:19
11:10

confidentiality
34:2
confinement 32:11,
16, 17 33:2 34:15
conforms 32:12
confrontation
19:16
Congress 30:13
31:7
consider 11:4
31:9 32:22
considered 13:9
30:16
consistent 14:8
27:16 31:19
constituted 16:16
contemplating
17:20
context 7:14 21:6,
22 22:21 23:12,
15 24:8, 10, 20
26:5 28:9 30:4
continued 2:22
3:1 6:11 12:21
continuous 7:5
continuum 16:5, 8,
18
contributed 19:15
20:1
control 10:17
17:13
controlling 25:4
conversation 9:16
convey 23:9
convicted 25:16
correct 9:8 10:6
36:6
cost 26:12 34:4,
21, 22
could've 8:22
counsel 8:2 12:7
14:9 36:9
counseling 25:14
count 27:18

counterproductive 29:*11*
country 5:*10* 17:*20*
County 19:*6*
course 7:*4*, *15* 9:*13* 21:*12* 26:2 31:*12*
COURT 1:*1*, *18* 4:*7*, *12*, *17*, *20* 5:*1*, *3*, *7*, *19* 6:*6*, *11*, *14* 7:*7*, *18*, *20* 8:*15*, *19* 9:*1*, *6*, *9*, *20* 10:*4*, *7*, *19*, *21* 11:*4*, *11*, *13*, *14*, *17* 14:*6* 18:*3*, *5* 21:*16* 22:*15* 23:*1* 27:*6*, *12*, *14* 28:*7*, *17*, *21* 29:*2*, *5*, *7*, *14* 36:2
Courthouse 1:*20*
Court's 8:*5*
creators 16:*12*
crew 18:*19*
cried 22:*5*
crime 9:*18*, *18* 16:*16*
criminal 4:*3* 7:*12*, *13*, *17* 8:*2*, *3*, *11* 12:*1*, *2*, *14*, *15* 13:*2*, *14*
culpability 15:*16*
cultures 20:*16*

< D >
D.C 3:*7*
Dalton 15:*19* 16:*6*, *20*
damaging 29:*11*
dangerous 31:*2*
day 31:*15*
days 13:*9* 21:*17* 22:*17* 27:*9* 28:*20* 32:*16* 33:*1* 34:*16*

death 17:*1* 21:*19* 30:*20*
debate 5:*17*
December 1:*12*
declaration 21:*1*
deeply 5:*16* 18:*17* 25:*1*
Defendant 1:*9* 2:*12* 3:*3* 9:*15* 12:*1*, *5* 14:*9*, *15*, *19*, *21* 15:*4*, *14*, *16*, *20* 16:*13* 17:*9*, *10*, *12* 28:*20* 29:*1*, *4*, *6*, *9*
defendants 15:*20*
defendant's 9:*15* 13:*5* 16:*4* 17:*16*
Defender 2:*14*
defense 8:*1* 12:*7* 14:*9* 16:*19*, *20*
degree 21:*9*
denied 13:*12*
departure 4:*18* 5:*4* 6:*22* 8:*12* 11:*12*, *18*, *22* 13:*1*, *11*
described 5:*22* 20:*22*
descriptive 14:*22* 22:*19*
desire 15:*2* 19:*16*, *20* 24:*18*
despise 30:*18*
deter 17:*8* 28:*11*
determine 7:*9*
deterrent 26:*8*
deviation 6:*19* 12:*5* 13:*4*
devoted 19:*2*
difference 14:*11*
different 14:*13* 27:*20*, *21* 28:*1*
difficulty 20:*3* 25:*4*
direct 19:*16*

directed 12:*17* 34:*5*
direction 33:*22*
directs 8:*4*
disagree 30:*19*
disagrees 15:*18*
discontrolled 20:*6*
discretion 9:*6*
discuss 4:*18*
disengage 20:*15*
disinhibited 28:*8*
disinhibition 20:*14*
DISTRICT 1:*1*, *2*, *18* 2:*7*
disturbed 10:*5*
disturbing 14:*20* 21:*3*
Division 1:*3*, *19*
document 23:*8*
documentary 18:*19*
documented 18:*21* 25:*3* 28:*6*
doing 29:*12*
doubt 22:*1*
downward 4:*18* 5:*4* 6:*22* 8:*12* 11:*12*, *17*, *22* 13:*1*, *11*
Dr 5:*14* 18:*10*, *10* 19:*14* 20:*10* 25:*4*
dramatically 20:*19* 25:*6*
dredging 8:*8*, *9*
driver 25:*18*
driving 8:*1* 32:*4*
drunk 32:*4*
duration 12:*4* 13:*3*

< E >
earlier 10:*11*, *12*
early 32:*22*
EASTERN 1:*2*, *19*

2:*7*
effect 26:*8*
effort 24:*15*
elements 20:*7*
Emanuel 10:*1*, *7* 30:*2*
emotional 5:*11*, *12* 7:*2* 11:*5*, *7*
emotionally 22:*9*
emotions 6:*18* 7:*6* 11:*4* 19:*18* 20:*6*, *11*
employment 33:*5*
endure 30:*22*
enforcement 22:*5*, *6*
engage 20:*15* 27:*1*
engaged 21:*13*
enjoys 25:*14*
entire 7:*15*
environment 25:*5* 28:*8*
equality 19:*3*
ERIC 3:*4* 4:*11*
especially 9:*12*
ESQUIRE 2:*4*, *13* 3:*4*
essence 20:*17*
essentially 21:*1*
event 5:*13* 26:*22* 28:*9* 36:*10*
events 7:*3*
evidence 26:*6*
exacerbated 20:*8*
example 27:*2*
exceptional 11:*21*
excessive 32:*9* 34:*12*
excuse 22:*16*
excused 14:*17* 35:*2*
executive 20:*18*
exercising 17:*11*
experiences 19:*11*,

*15*
**expires**  36:*4*
**explained**  5:*14*
  20:*10*
**explaining**  15:*1*
**explains**  23:*13*
**express**  19:*18, 20*
**expressed**  25:*6*
**expression**  20:*16*
**extraordinarily**
  21:*2*
**extreme**  23:*13*

**< F >**
**face**  15:*11*
**Facebook**  33:*15*
**facets**  19:*18*
**fact**  10:*9*  30:*16*
**factor**  19:*22*
**factors**  4:*19*
**Fairfax**  19:*5*
**fall**  23:*17*
**falls**  16:*18*
**families**  18:*21*
  30:*6*
**family**  25:*19*
  29:*17*
**family's**  25:*19*
**father**  29:*18*
**fax**  2:*19*
**fear**  17:*1, 13*
**features**  20:*13, 19*
**Federal**  2:*14*  9:*19*
  17:*22*  28:*2*
**feel**  31:*8*
**felon**  25:*16*
**felt**  22:*6*  32:*8*
**fiancé**  19:*8*  22:*8*
  29:*19*
**fights**  32:*4*
**film**  18:*19, 19*
**fine**  34:*21*
**firehose**  26:*11*
**firm**  4:*11*

**first**  4:*21*  12:*9, 22*
  17:*11*  18:*11, 15*
  23:*11*
**five**  8:*17*  18:*21*
  27:*12*  28:*20*
  32:*10*  33:*19*
  34:*17*
**followed**  7:*4*
**following**  2:*22*
  7:*16*  21:*17*
**foregoing**  36:*5*
**former**  24:*21*
**forth**  14:*5*
**foster**  5:*17*
**found**  19:*20*
  20:*10*  25:*14*
**four**  27:*9*  28:*20,
20*
**Fourth**  8:*12*
**free**  20:*16*
**frequently**  31:*13*
**friends**  10:*8*
**front**  8:*4*
**full**  36:*6*
**fully**  27:*2*
**functioning**  20:*18,
18*
**funny**  14:*16*
**further**  10:*21*
  36:*8*
**future**  25:*15*

**< G >**
**gay**  19:*3, 11*
  21:*18*  22:*12*
**general**  15:*13*
**generally**  22:*4*
  26:*9*
**generically**  16:*3*
**GEORGE**  1:*8*  4:*4*
**GERALD**  1:*17*
**GEREMY**  2:*13*
  4:*10*
**gif**  24:*1*

**Ginwright**  19:*5*
  29:*19*
**given**  7:*2*  11:*10*
  25:*3*
**go**  10:*15*
**godmother**  22:*10*
**going**  4:*14*  15:*3,
9*  23:*22*  26:*10*
  31:*21*  32:*7, 14*
  34:*7, 13, 21*
**Golbeck**  18:*10*
  20:*22*  23:*13*
**Good**  4:*5, 7, 9, 12,
13*  5:*6, 7*  26:*1*
**Government**  7:*22*
  8:*4, 14*  10:*16*
  12:*6*  14:*1, 4, 11*
  15:*6, 18*  16:*7, 17*
  17:*4*  21:*21*  22:*17*
  23:*7*  24:*2*  26:*13*
  27:*19*  29:*17*  32:*8,
20*
**Government's**
  9:*11*  14:*14*  15:*21*
  17:*6*  25:*21*
**grant**  11:*12, 17*
**granted**  7:*1*
**greater**  26:*7*
  28:*15*
**guess**  6:*7*  30:*17*
**guided**  22:*3*
**guideline**  7:*11, 11*
  11:*21*  13:*13, 15*
**guidelines**  7:*7*
  11:*18, 19*  13:*7*
  32:*8, 9*
**guilty**  29:*14*
**gun**  10:*16*  15:*8*
  17:*12*  23:*21*
**gun,**  15:*10*
**gunman**  21:*19*
**guns**  24:*1, 14*

**< H >**

**hampered**  19:*17*
**Hampshire**  3:*6*
**happened**  8:*10, 11*
  10:*1*  12:*10, 12*
  30:*2, 4, 8*
**hard**  20:*5, 5*
  22:*12*
**harm**  26:*1*
**hated**  22:*13*
**head**  15:*1*
**health**  31:*9*  33:*22*
  34:*2*
**hear**  5:*4*  18:*4*
**heard**  1:*17*  14:*1*
  29:*22*
**highly**  11:*8, 8, 10*
**Hillyer**  8:*7, 11*
  12:*7*
**history**  5:*10*
  13:*14*  20:*2*  21:*18*
  25:*2*
**home**  32:*11, 15,
17*  33:*2*  34:*15*
**Honor**  4:*5, 9, 16*
  5:*2, 6, 22*  6:*10*
  7:*19, 21, 22*  8:*18,
22*  9:*8*  10:*3, 18*
  11:*1*  14:*3, 4*  18:*5*
  28:*13*  29:*1*  35:*3*
**HONORABLE**
  1:*17*
**horrible**  30:*5*
**hour**  10:*11, 12*
**house**  9:*15*  25:*17*
**human**  19:*1*

**< I >**
**ideas**  31:*14*
**identified**  23:*7*
**if-then**  16:*3*
**illegal**  8:*7, 9*
**image**  24:*1*
**image-oriented**
  23:*16*

immature  29:*11*
impact  31:*11*
impairments
  20:*18*  25:5
importantly  14:*20*
impose  34:*21*
imposed  13:*21*
impulses  22:2
  25:4
impulsive  5:*15*
  20:4  31:*11*
impulsivity  20:*14*
inability  25:3
inappropriate
  21:*14*
inaudible  31:*1*
incarceration
  13:*20, 21*  14:6
  25:22  26:4, 7
  34:22
including  28:2
  31:*14*
incredibly  29:9
indicates  15:22
indicating  23:*15*
indication  26:22
  34:*11*
individual  28:5
individuals  15:*17*
  24:5  30:*17*
information  31:*10*
  34:3
informed  9:*17*
inhibiting  20:4
initial  9:*14*  23:*20*
injury  17:*1*
inspection  33:*11*
Instagram  33:*18*
installed  33:9
instances  8:8
intention  15:5
  24:*13*
interest  18:*16, 17*
  22:3

interested  36:*10*
interned  18:*18*
Internet  16:22
  17:*15*  20:9, *13*
  21:*12, 13*  28:8
interpersonal
  20:*17*
interstate  29:*15*
interviewed  16:*15*
  22:4
investment  26:*14*
involve  27:*21*
involved  8:7
  15:22  22:*19*
  27:*17*
involving  16:9
  27:22
isolation  22:*21*
issue  5:*12*  23:*12,
  14*
issues  13:6  31:*14*
its  14:*4, 11*

< J >
jail  27:*10*  28:*19,
  21*  29:2  32:6
Jamieson  2:8
Jewish  16:*12*
jihad  16:*10*
job  25:*14, 17*  26:2
jokes  14:*16*
Jones  15:*19*  16:2,
  6, 20
Judge  1:*17*
judgment  13:*8, 11*
June  6:*1, 2*  15:6
  22:4  25:*13*  27:9,
  *11*
justice  18:*14*  19:9,
  *10, 19*  22:3  28:6
  30:*10*

< K >
KAMES  2:*13*  4:9,
  *10, 13, 14, 16, 22*

5:2, 5, 8, 21  6:*10,
  13, 16*  7:*11, 19*
  10:22  18:*4, 5*
  27:7, 8, 13, 15*  35:3*
keeping  32:*21*
key  18:7
kids  18:*21*
King  2:*15*
know  30:9  31:*12*
  32:3  33:*1, 17*
knowing  15:*14*
  24:*3, 6*
knows  18:5  21:*16*
  22:*15*  23:*1*  24:*20*
KYLER  1:8  4:4
  18:*11*  19:6  20:*10*
  21:*11*
Kyler's  20:8

< L >
language  14:22
language,  22:*20*
LARGE  36:*1, 4,
  18*
law  17:*8*  22:5, *5*
law-abiding  12:6
  13:5
laws  10:*17*
lawyer  29:*16*
  31:*10*  32:2, *20*
lax  10:*17*
leave  33:4
LEE  1:*17*
left  10:*10*
lengthy  20:2
Leslie  15:*19*  16:6,
  20*
letter  19:*4*  29:*17,
  18*
letters  18:8
level  13:*15*
life  12:6  13:5
  18:*13*  31:*17, 18*
light  7:6, *14*

limited  12:4  13:*3*
  23:*1*
limits  30:*3*
linked  23:*3, 20*
  24:9
Literally  15:9
little  26:*14*
live  17:*14*
LLP  3:5
located  1:*19*
long  27:6  28:*19*
  29:2  31:5
longer  29:4
look  22:*20*  23:6
  24:7  31:*17, 18*
lose  26:2
lost  25:*17*
loved  24:*21*
low  21:9
lower  23:*17*

< M >
maintaining  20:5
making  17:*21*
  21:*14*  27:*18*
man  10:*11*  18:*12*
  19:*11, 15*
manager  29:*20*
marked  6:*19*
  12:5  25:*11*
mass  5:9  21:*17*
  25:*1*  28:9
matter  1:*16*
  11:*14*  14:2  21:*12*
mean  26:*18*
means  33:9
media  17:*17*
  19:*21*  20:*12, 20*
  26:*19*  33:*16*
meeting  10:*13*
member  19:6
members  29:*18*
  30:*12, 13*  31:7
member's  25:*19*

mental 31:9
33:21 34:2
mentioned 24:5
merely 21:22
message 17:19
messages 23:4, 19
middle 23:5
mild 23:16
mind 12:16
minimal 14:10
Minnesota 18:15
misguided 5:16
mitigating 23:11
modern 21:18
25:2
MoloLamken 3:5
4:11
moment 30:1
money 24:18
monitored 26:16
monitored, 26:18
monitoring 14:7
26:18 33:8
months 13:16, 20
14:6 16:22 17:2,
5 25:17 27:12
32:11, 19 34:17
morning 4:5, 7, 9,
12, 13 5:6, 7
Morton 16:8, 19
17:2 27:20
mother's 29:18
motion 4:17 5:4
13:11
motivated 22:2
24:18
mourn 30:8
multiple 7:8 8:8
12:13 13:8, 8
16:13
murder 10:10
16:11
murdered 30:6

< N >

NAACP 19:6
29:20
names 33:17
nation 30:8
nature 7:2 23:11
navigated 18:22
necessary 28:15
need 23:22
nefarious 24:22
negative 19:15, 18
neither 36:8
never 18:12
23:21 24:14
New 3:6 31:14
night 10:10, 14
29:4, 5
nightclub 5:8
9:22 12:17 30:5
Ninth 13:10
NITZ 3:4 4:11,
13, 17 5:6, 7 10:21
Northwest 3:6
Notary 36:3, 17, 19
noted 14:4 16:21
notion 8:2
number 17:18

< O >

objection 5:1
occur 23:18
occurred 21:16
occurrence 7:13
8:3 12:1, 14 13:2
offense 13:15
20:1, 21 24:17
32:2
offenses 28:2
Office 2:6, 14
30:17 33:12 34:4,
6
officer 11:15
32:20 33:6, 9
34:1
officials 9:19
10:16 17:22

okay 4:16 10:19
11:2 21:5 27:14
once 8:10, 11
online 20:12, 16
23:16
ordinary 17:22
organization
18:16 19:2
organizations
16:12
organizing 20:6
orientation 19:13
original 23:15
24:8
Orlando 5:8 22:9
outlet 19:21 20:11
outlined 27:17

< P >

packed 10:13
page 2:22 23:4
paid 34:4 35:1
paper 8:6 14:5
Park 16:12
participate 34:7
participating
33:21
parties 1:22
party 36:9
passionate 18:14
19:9 28:5
pay 34:5
people 12:11
17:18 19:3 20:3
21:2, 18 22:11
24:4 30:18 31:13
performed 33:11
period 5:20 6:3
31:5, 21
person 17:15
26:3 30:22 31:19
32:12
personal 24:18
personality 19:19

20:1, 8
personally 24:20
petitions 30:11
phone 33:10
Pierson 13:10
place 16:22 18:15
31:13 32:14 33:4
places 22:7
placing 34:14
Plaintiff 1:6 2:3
planning 12:3
platform 17:17
plea 13:19 14:8
please 28:18
pled 29:14
point 6:20 10:22
24:12, 17 32:21
points 23:10
27:19
Police 6:8 9:14,
16, 17 12:20 16:15
political 14:15
20:11
position 8:6 14:5
post 23:15, 20
24:8
posted 16:13
posting 16:10
potentially 9:4
practice 21:14
precisely 26:3
prepared 11:16
present 1:21
presented 11:16
28:7
presentence 4:21
6:1 14:21 25:10
president 19:5
31:14
pretrial 27:3, 7, 11
33:3
pretty 27:3
prison 31:5, 21
32:6, 6 34:19

probation   11:*15*
  14:*10*   18:6   26:*15,*
  *16*   28:*14*   32:*15,*
  *18, 20, 22*   33:6, *8,*
  *12, 22*   34:*3, 6, 15*
problem   34:9, *10,*
  *11*
proceedings   35:*4*
  36:*7, 10*
process   6:*18*   7:6
  11:*3*
produced   18:*19*
Professor   20:22
  23:*13*
program   34:*4*
progressed   25:*13*
promote   17:7
  20:*14*
promoting   19:2
prompted   5:*10*
prop   8:7, *9*
properly   11:*15*
prosecution   26:8
protest   17:*10*
  23:*16*   30:*12*   31:*1,*
  *2*
provide   21:6
  24:*10*
provided   31:*10*
provides   11:2*1*
Public   2:*14*   5:*17*
  15:*13*   18:*16*   22:6
  26:*9*   30:*17*   36:*3,*
  *17*
published   17:*16*
Pulse   5:8   9:2*1*
  12:*17*   22:*1*   30:*4*
punish   17:7   31:6
punished   25:20
punishment   17:*18*
  31:22
purposes   13:7
  26:20   28:*16*
put   16:*4, 18*
  26:*11*   32:5   34:*19*

putting   14:5
  31:*20*

< Q >
qualify   13:*1*
question   11:*16*
  12:*12*   31:*4*
questions   6:7   8:*1*
quick   10:22
quite   5:*21*
quote   15:2, *9, 9,*
  *10, 11*   22:*10, 19*
  23:2*1*

< R >
random   33:*11*
range   13:*13, 15*
ranged   5:22
reaction   5:*15*   7:3
read   29:2*1*
real   24:6, *6*
reality   17:9   22:*10,*
  *12*
realizes   25:7
really   7:5
realm   21:8
reason   11:*11*
  24:22   32:*4*
reasons   28:*13*
REBECCA   36:2,
  *16*
received   16:22
  17:2
recipients   24:*3*
recognize   6:2*1*
recommendation
  25:2*1*
record   11:*13*
reflect   11:*14*
reflected   18:8
reflection   14:*12*
regarding   34:2
regular   21:*14*
related   6:*3*   36:8
relatively   23:*16*

release   13:*17*
  14:7   27:*4, 7, 8, 11*
  33:*3*   34:*3*
released   18:20
remove   33:*12*
report   4:2*1*   5:*1,*
  *14*   6:*1*   11:*16*
  14:2*1*   19:*14*
  25:*10*
Reporter   36:2
reports   18:*10*
represents   12:5
repressed   19:20
republicans   24:*1*
request   14:5
require   26:*1*
  32:*15*
required   34:*1*
requirements   33:7
residence   33:*4*
respect   15:*15*
respectful   17:7
respective   1:22
responded   11:9
response   5:*11, 13*
  6:*16*   11:2, *5, 7*
restaurant   29:20
result   8:*10*
resulted   11:6
return   26:*14*
review   15:2*1*
  32:*19*
reviewed   4:2*1*
  29:*16*
rifle   21:20   28:*10*
right   4:20   5:*3*
  6:9, *14*   7:*18, 20*
  8:20   11:*13*   18:*3,*
  *3*   27:*13*   35:*1*
rights   17:*11*   19:*1,*
  *2*
Roe   29:*19*
room   15:*3*
rude   21:*14*

rules   32:*13, 17, 18*
  34:*18, 18*

< S >
safe   31:8
satisfactory   28:*15*
satisfy   26:20
saw   15:*13*
saying   11:*1, 2*
says   13:*19*   21:7
  22:*18*   23:*19*   24:2
SCHMITZ   1:8
  4:*4, 10, 12, 15*
  5:*11, 16, 20*   6:8,
  *15*   11:*1, 9*   12:*10,*
  *16*   18:9, *11*   19:9
  21:2*1*   22:2, *8, 16*
  23:9   24:*12, 19*
  25:*11*   26:2   27:*1*
  28:*11, 18, 19*
  29:*14, 22*
Schmitz's   7:*3*
  19:*8, 16*
school   18:22
Second   24:*12*
see   32:*3*
seen   17:*17*   34:*11*
Senate   15:*12*
  30:*14*
Senator   15:*10*
senators   15:*1, 12*
send   17:*19*   31:*4*
sent   16:*14*
sentence   14:*10, 12*
  17:*5, 6*   18:6
  25:22   26:*7, 12, 15*
  27:*4, 15*   32:*10*
sentencing   11:*15,*
  *19*   14:2   26:20
  28:*16*
series   27:*16*   31:2
serious   15:*15*
  17:*1*   24:*15*   28:*1*
  32:2

served 34:*16*
seven 18:*18*
sexual 19:*12*
Shirley 19:*5*
shoot 14:*22*
  15:*10* 24:*1*
shooting 5:*9* 7:*6,*
  *16* 21:*17* 22:*1, 9,*
  *17* 25:*2* 28:*10*
  30:*5*
shootings 5:*9*
short 23:*3*
shot 21:*19*
showed 10:*11*
shows 14:*21*
sides 13:*19*
sidewalk 30:*21*
significant 12:*3*
  18:*13* 25:*20*
similar 15:*17*
  17:*8, 20* 27:*17*
  28:*12*
single 5:*12* 6:*16,*
  *17* 7:*5, 12, 13, 16*
  8:*2, 3, 16* 9:*2*
  11:*6* 12:*1, 2, 14,*
  *15* 13:*2* 15:*22*
  16:*1* 27:*17* 31:*15*
site 16:*10*
situation 28:*12*
  31:*18*
six 13:*20* 14:*6*
  17:*5* 33:*19*
six-month 26:*12*
  32:*10*
slaughtered 22:*11*
  30:*7*
smart 33:*10*
social 17:*17*
  18:*14* 19:*8, 10, 19,*
  *21* 20:*12, 20* 22:*3*
  26:*19* 28:*5* 30:*10*
  33:*16*
software 33:*9, 13*

solicitation 16:*11*
sorry 29:*12*
South 16:*12*
speak 4:*14* 18:*11*
  20:*21*
specific 16:*14*
spent 27:*9*
spinning 21:*22*
splatter 15:*3*
splattered 30:*21*
spontaneous 5:*15*
  11:*5, 7*
Square 1:*20*
staff 15:*12*
standard 26:*17*
started 25:*15*
stated 16:*2*
statement 29:*7*
statements 16:*3*
  21:*3, 15* 23:*12, 14*
  24:*8, 11*
STATES 1:*1, 5,*
  *18* 2:*5, 6* 4:*3, 6*
  7:*12* 8:*6* 13:*9*
stay 33:*14*
stop 26:*10*
story 18:*21*
Street 2:*15* 32:*5*
streets 31:*8*
strict 27:*3*
strong 12:*10, 11*
  30:*1*
stupid 29:*10*
subject 12:*13*
submissions 29:*16*
submits 15:*6*
  16:*7, 17*
submitted 18:*9*
  19:*4* 29:*17*
substance 34:*8*
sufficient 26:*19*
  28:*14* 31:*22*
sufficiently 31:*6*
suggest 25:*22*

28:*7*
suggested 15:*7*
suggesting 26:*9*
suggests 14:*15*
  21:*21* 22:*13*
  32:*11*
Suite 2:*16*
supervised 13:*16*
  14:*7*
supervision 34:*22*
support 16:*10*
sure 6:*6* 12:*16*
  34:*9, 12*

< T >
take 7:*8* 23:*4*
taken 23:*14*
tamper 33:*13*
tells 32:*21*
term 13:*16*
termination 33:*1*
terms 26:*9* 33:*2*
terrible 9:*21*
terrorism 28:*2*
testing 14:*16* 34:*8*
Thank 4:*8* 5:*3, 5*
  7:*18, 19, 21* 10:*19,*
  *20* 14:*3* 18:*2*
  28:*17* 35:*1, 3*
thereof 36:*11*
thing 25:*7* 29:*10,*
  *22*
things 12:*21*
  30:*10* 33:*15*
think 10:*16*
  12:*11* 22:*18* 25:*9,*
  *15* 27:*8* 30:*3*
  31:*19, 20* 32:*7*
  33:*14* 34:*9*
third 19:*22* 24:*17*
threat 16:*2* 24:*7,*
  *14* 31:*2*
threaten 9:*18*
  10:*15* 30:*12, 13, 14*

threatened 14:*22*
  30:*20* 31:*7*
threatening 8:*16*
  9:*2, 5* 21:*3, 9*
  22:*18* 23:*18*
  29:*15*
threats 13:*8* 15:*5*
  16:*1, 14* 17:*3, 14,*
  *21* 21:*12* 22:*16*
  24:*21* 26:*10*
  27:*18* 31:*3*
three 12:*4* 14:*6*
  15:*1* 23:*10*
three-year 13:*16*
tied 19:*10*
time 5:*20* 6:*3*
  20:*5, 6* 21:*4*
  27:*10* 31:*5, 21*
  33:*14*
times 10:*8*
today 17:*18*
told 12:*19* 16:*15*
  22:*5*
tolerated 18:*1*
  34:*13*
top 27:*21*
topic 5:*17*
touched 5:*16*
  24:*15* 25:*12*
tragedy 9:*21*
  12:*18* 30:*5*
transaction 7:*13,*
  *17* 8:*3* 9:*10, 12*
  12:*2, 15* 13:*2*
transcript 36:*6*
transgender 19:*3*
transmitted 15:*7*
  16:*2*
treatment 33:*22*
  34:*3, 8*
TREXLER 36:*2,*
  *16*
troll 21:*13*
trouble 18:*13*

true  36:*6*
try  7:*5*
trying  17:*12*  23:*6*,
9  26:*11*
Turner  15:*19*
16:*6*, *20*
tweet  6:*4*, *12*  8:*16*
9:*2*, *14*  23:*6*
tweeted  9:*17*  15:*8*
22:*16*
tweets  5:*11*, *19*, *21*
6:*2*  8:*17*  9:*5*
11:*6*  12:*13*  15:*7*,
*13*, *22*  22:*19*, *20*
23:*1*, *7*, *8*
Twitter  15:*13*
20:*22*  21:*3*, *8*, *10*,
*15*  23:*12*, *18*
26:*10*  31:*12*
33:*15*
Two  12:*3*  19:*7*,
*18*  32:*14*, *18*  34:*14*
type  26:*3*  27:*1*
typically  20:*3*

< U >
U.S  6:*8*  9:*14*
11:*19*  15:*1*, *10*, *12*
16:*15*
Uber  25:*18*
unable  25:*18*
unconstitutional
10:*2*
underlying  26:*21*
understand  12:*9*,
*18*  23:*5*, *8*  34:*13*,
*20*
understanding
13:*18*  18:*7*  22:*21*
undoubtedly  19:*10*
Unfortunately
20:*12*
unique  11:*8*
20:*19*  26:*22*  28:*9*
uniqueness  7:*14*

UNITED  1:*1*, *5*,
*18*  2:*5*, *6*  4:*3*, *6*
8:*6*  13:*9*
unknowable  17:*18*
unlawful  14:*20*
17:*21*  24:*10*
unusual  6:*21*
11:*8*, *10*
upset  9:*21*, *22*
10:*4*
use  15:*10*  31:*16*
33:*10*  34:*12*

< V >
value  20:*16*
versus  4:*4*  8:*6*
13:*10*  15:*16*
victimized  26:*4*
victims  17:*19*
30:*6*
victim's  15:*2*
view  9:*11*, *13*
14:*14*  17:*6*  30:*4*
viewed  7:*16*
views  12:*10*, *11*
14:*11*, *13*  30:*1*, *18*,
*19*
violations  7:*8*
28:*1*
violence  17:*15*
violent  16:*10*
VIRGINIA  1:*2*,
*11*, *19*, *20*  2:*7*, *9*,
*17*  36:*1*, *4*, *18*
visceral  5:*10*
visit  6:*8*
volunteered  19:*1*, *7*
voting  30:*11*

< W >
waive  34:*1*
want  14:*1*  29:*8*
33:*19*, *21*  34:*9*, *12*
wants  17:*12*

warranted  7:*2*
11:*22*
Washington  3:*7*
way  11:*9*  15:*14*
24:*3*, *5*, *7*  25:*7*
30:*10*  31:*16*
ways  25:*20*
Web  16:*10*
wedding  25:*19*, *19*
Well  4:*20*  6:*3*, *6*
7:*7*  9:*9*, *11*  12:*8*
13:*4*  21:*7*
well-documented
20:*2*
went  6:*8*
we're  14:*5*
west  21:*1*
we've  18:*6*  19:*4*
28:*7*
whatsoever  32:*4*
widely  17:*17*
wild  21:*1*
wit  36:*1*
words  15:*6*  17:*16*
work  18:*16*  24:*4*
world  17:*14*
worst  5:*9*  21:*17*
25:*1*, *7*
writes  19:*8*  21:*7*
wrong  9:*20*
wrote  22:*8*, *10*

< Y >
Yeah  29:*6*
year  18:*6*, *22*
25:*13*  28:*14*
32:*22*
years  14:*7*  18:*18*
19:*7*  32:*14*, *18*
34:*15*
young  18:*12*
19:*11*, *15*

< Z >
zero  26:*6*